# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DENEEN BURNS,**

        **Plaintiff,**

**-vs-**                                                    **Case No.  6:05-cv-825-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I. BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on August 12, 2002.  R.53-55.  She alleged an onset of disability in March 2002, due to bilateral femur fractures, pelvic fracture,

hypertension and degenerative disc disease.  R. 30, 57, 173.  Her application was denied initially and

upon reconsideration.  R. 30.  Plaintiff requested a hearing, which was held on August 12, 2004,

before Administrative Law Judge Henry Snavely (hereinafter referred to as "ALJ").  R. 290-315.  In

a decision dated November 1, 2004, the ALJ found Plaintiff not disabled as defined under the Act

through the date of his decision.  R. 12-23.  Plaintiff timely filed a Request for Review of the ALJ's

decision.  R. 9-11.  The Appeals Council denied Plaintiff's request on March 31, 2005.  R. 5-7.

Plaintiff filed this action for judicial review on June 2, 2005.  Doc. No. 1.

### B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of metal rods in both femurs, pins and screws in both knees, bolt and screws in

right pelvic joints, pain in back, numbness in right toes and heel, and severe headaches and blurriness

in eyes.  R. 57, 90.  Plaintiff was forty years old at the time of the decision, has a high school

education, and past work experience as a waitress, lawn service laborer, and childcare worker.  R. 15,

55, 296-97.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that

Plaintiff suffered from bilateral femur fractures, pelvic fracture, hypertension and degenerative disc

disease, which were "severe" medically determinable impairments, but were not severe enough to

meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

R. 22, Finding 3.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC)

to perform light work, as she could lift twenty pounds occasionally and ten pounds frequently,

stand/walk six hours in an eight-hour workday and sit six hours in an eight-hour workday.  R. 22,

Finding 6.  In making this determination, the ALJ found that Plaintiff's allegations regarding her

limitations were not totally credible.  R. 20.  Based upon Plaintiff's RFC, the ALJ determined that she

could not perform past relevant work.  R. 22, Finding 7.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 22-23, Findings 11-12.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 23, Finding 12.

Plaintiff now asserts three points of error.  First, she argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered the non-exertional impairments of pain and headaches.  Second, she claims the ALJ erred by finding she had the RFC to perform light work contrary to her treating doctors' opinions.  Third, Plaintiff asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.

Because the Court finds that the ALJ's rejection of Dr. Avila's opinion and failure to discuss Plaintiff's April 2004 MRI results was not based on substantial evidence, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

**RFC and the treating physicians' opinions.**

Plaintiff claims that the ALJ should not have found her able to perform a full range of sedentary work in light of limitations assigned by Dr. Macool and Dr. Avila, precluding the performance of light work.  The issue is whether the ALJ's complete discrediting of those opinions is supported by substantial evidence, consistent with the above standards.  With respect to Dr. Macool's and Dr. Avila's opinions, the ALJ stated that they were "inconsistent with the record when considered in its entirety."  R. 18, 19.  Regarding Dr. Avila's opinion, the ALJ also rejected it as: "Including his own notes, which reflect improvement in the claimant's condition with treatment."  R. 19.  The ALJ noted particularly the Plaintiff's condition on physical examinations.  If Dr. Macool's and Avila's opinions are, indeed, unsupported by objective medical evidence, the ALJ did not err in discrediting them.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See id.*; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See*

-5-

*Edwards*, 937 F.2d at 583 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends that the ALJ did not give sufficient weight to the opinion Dr. Duby Avila (R. 208, 216-21), her treating physician[1], who opined that Plaintiff was disabled. Instead, the ALJ gave considerable weight to the opinions of Dr. Ranganathan, an examining physician, and Plaintiff contends that this was error, principally because Dr. Avila had the benefit of two sets of additional diagnostic testing such as MRIs and EMG/NCS which did not take place until after Dr. Ranganathan's examination on March 10, 2003. R. 161-63. The Commissioner contends that the ALJ gave adequate reasons for finding Dr. Avila's views as inconsistent with the record. R. 18-19.

---

[1]Plaintiff also contends that the ALJ did not give sufficient weight to the opinion of Dr. James Macool (R. 255, 256, 261) who opined she could not work as of January and March 2004. Because Dr. Macool's opinion was rendered before the April 2004 MRI results, only Dr. Avila's opinion will be discussed.

In February 2000, Plaintiff was seriously injured in an automobile accident and sustained a right pelvic fracture and bilateral femoral fractures; Plaintiff underwent open reduction and internal fixation of the bilateral femoral fractures. R. 109-14.  In November 2000, X-rays revealed that both femoral fractures had healed without any signs of hardware loosening, failure or migration.  R. 136. Plaintiff testified that she continued to work part-time at the day care center after the accident but that she experienced worsening pain levels and headaches.  R. 298.

Plaintiff returned to Dr. Macool on March 25, 2003 with severe back pain and a lump in the mid back area, radial numbness and weakness, without relief from medication.  R. 263.  An MRI of the lumbar spine dated April 5, 2003 revealed a small right posterior disc herniation at T10-T11 and disc bulges seen at T11-T12, L2-L3, L3-L4 and L5-S1.  R. 278-79.  X-rays of the cervical spine revealed spondylitic changes and reversal of the normal cervical spine lordosis which could be associated with spasm. R. 277.

As support for the ALJ's finding that Plaintiff was capable of light work, the Commissioner points to Dr. Avila's records from September 24, 2003, in which Dr. Avila reported that Plaintiff's ambulation and ability to walk on heels and toes was normal R. 231, 235.  The Commissioner also cites a January 2004 progress note from Dr. Avila which states that Plaintiff's "activity level allows her to do her ADL's [activities of daily living] and some walking." R. 217.  The Commissioner also contends that it was appropriate for the ALJ to give considerable weight to Dr. Ranganathan's consultative evaluation from March 10, 2003 (R. 18, 161-64), which opined that Plaintiff was capable of light work. R. 163.  Dr. Ranganathan noted at that time that Plaintiff did have mild tenderness in the lower right sacroiliac joint and the right lower paralumbar area.  R. 162.  The Commissioner

points out that the ALJ also considered the opinions of the State agency medical consultants from November 2002 and March 25, 2003 (R. 20, 153-60, 165-72).

After an MRI of Plaintiff's lumbar spine dated April 5, 2003 revealed a disc herniation and disc bulging (R. 278-79), Plaintiff first saw Dr. Avila on August 27, 2003.  R. 247.  Plaintiff returned to see Dr. Avila on September 24, 2003 with the same complaints of neck and back pain, and her dosage of Neurotin was increased.  R. 239.  In December 2003, Plaintiff underwent an injection from Dr. Avila of lidocaine, marcaine and DepoMedrol to the right trapezius area.  R. 224.

Between February and March 2004, Dr. Avila noted loss of range of motion and significant tenderness over the sacroiliac joint and that Plaintiff had loss of normal cervical and lumbar lordosis, bilateral ulnar nerve entrapment neuropathy.  R. 209-14.  An MRI of the lumbar spine dated April 13, 2004 did not reveal any changes from the previous study done on April 4, 2003. R. 276.  However, an MRI of the cervical spine revealed an increased size of right C5-C6 disc herniation since May 28, 2003, compressing the exiting right C6 root. R. 274.  An August 14, 2004 EMG/nerve conduction study revealed an abnormal neuroconduction study with bilateral ulnar nerves entrapment neuropathy at the elbow level (Cubital Tunnel). R. 222-23.

Dr. Avila's January, March, and June 2004 Medical Verification Forms and Statement of Ability To Do Work-related Activities were completed with these findings as support for his opinion that Plaintiff could not lift more than 10 pounds, could only stand for one hour with two breaks of ten minutes, and needed to alternate sitting and standing to relieve pain or discomfort, with limited pushing and pulling and many postural limitations.  R. 208-20.  Dr. Avila's diagnosis was that Plaintiff suffered from a decreased range of motion, multilevel degenerative disease, facet

arthropathy, compression fracture at multiple levels, decreased sensation of left upper extremity, cubital tunnel bilaterally by NCS, and chronic low back, back and neck pain. R. 219-21.

The ALJ's decision to discredit Dr. Avila's opinion, particularly those based on or after the April 2004 test results, was not supported by substantial evidence. It was error for the ALJ to not discuss or even mention the April 2004 MRI results, particularly in light of Plaintiff's counsel's identification and argument that the April 2004 test results at the hearing indicated a worsening of Plaintiff's condition. R. 313-14. Alternatively, it was error for the ALJ not to order a new consultative examination by an orthopedist and to rely on Dr. Raganathan's outdated March 10, 2003 assessment that did not include a discussion of the April 2004 MRI or the August 2004 EMG/nerve conduction study. R. 222-23.

Because of this disposition, the Court need not address the other issues raised by Plaintiff in her brief.

### CONCLUSION

The decision of the Commissioner is not supported by substantial evidence and it is therefore **REVERSED.** The matter is **REMANDED** to the Commissioner for additional consideration regarding Plaintiff's residual functional capacity in light of her allegations of pain and functional limitations, giving due regard to the findings of her treating physicians, as set forth above. The Clerk is directed to enter judgment accordingly and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 11, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record